IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.D., a student with a disability, and<br>D.D., his parent, on her own behalf and<br>on behalf of J.D.,<br><br>      *Plaintiffs*<br><br>    v.<br><br>**THE PENNSYLVANIA VIRTUAL<br>CHARTER SCHOOL**,<br><br>      *Defendant* | Case No. 19-cv-0129-JMY |

## MEMORANDUM

**YOUNGE, J.**                                                                                           **MARCH 12, 2020**

This is an appeal from the due process decision of a hearing officer under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 ("IDEA").[1] The immediate issue before the Court is whether Plaintiffs J.D. and D.D. may supplement the administrative record in support of their appeal. The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons that follow, the Court denies Plaintiffs' Motion to Supplement the Administrative Record ("Mot.," ECF No. 10-1).

---

[1] In 1975, Congress provided that it would make funds available for state special education programs on the condition that states implement policies assuring a "free appropriate public education" (commonly known as a "FAPE") for all their disabled children. *Id*. § 1412(a)(1)(A). Congress passed the law known today as the IDEA "to assure that all children with disabilities have available to them . . . a [FAPE] which emphasizes special education and related services designed to meet their unique needs[.]" *Id*. § 1400(c).

I. **LEGAL STANDARD**

When a party brings an action for judicial review of an IDEA administrative decision, IDEA § 1415(i)(2)(C)(ii) provides that the "court shall hear additional evidence at the request of a party." Despite the statute's mandatory language, courts have consistently held that district courts have discretion to decide whether to admit additional evidence after evaluating it for admissibility. *See, e.g.*, *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 762 (3d Cir. 1995); *I.K. ex rel. B.K. v. Sch. Dist. of Haverford Twp.*, 961 F. Supp. 2d 674, 692 (E.D. Pa. 2013) (noting that "what additional evidence to admit in an IDEA judicial review proceeding . . . should be left to the discretion of the trial court" (internal quotation marks and citation omitted)); *see also A.H. by and through K.P. v. Colonial Sch. Dist.*, 779 F. App'x 90, 93 (3d Cir. 2019) (reviewing district court order denying a motion to supplement the administrative record for abuse of discretion).

The Third Circuit first considered the application of IDEA § 1415(i)(2)(C)(ii) in *Susan N.*, in which it held that a district court must evaluate a party's proffered evidence and exercise "particularized discretion in its ruling so that it will consider evidence relevant, non-cumulative and useful" in determining whether a child's program is in compliance with the IDEA. *Susan N.*, 70 F.3d at 760; *accord Colonial Sch. Dist.*, 779 F. App'x at 93. "[T]he courts have an independent duty to enforce the requirements of the IDEA, which Congress intended would ensure that every child receive a [FAPE]." *M.C. v. Sch. Dist. of Phila.*, 393 F. Supp. 3d 412, 416 (E.D. Pa. July 31, 2019); *see also Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 517 (E.D. Pa. 2014) ("[T]he Third Circuit . . . has recognized that the primary goal and driving factor behind the IDEA is Congress's desire that every child receive the FAPE that is their right under the Act."). Accordingly, where supplemental evidence is relevant, non-cumulative, and useful in

determining whether a child was provided with a FAPE, it should be considered by the district court. *See Susan N.*, 70 F.3d at 760; *see also Colonial Sch. Dist.*, 799 F. App'x at 93.

## II. BACKGROUND

### A. Facts[2]

Plaintiff J.D. is a nineteen-year-old student who enrolled in Defendant Pennsylvania Virtual Charter School ("PA Virtual") in October 2017. (Hearing Officer's Final Decision and Order, ODR No. 20703-17-18 (hereinafter "Final Decision") at 2, 4 ¶ 5.) PA Virtual is a cyber charter school that delivers a significant portion of its instruction online. ("Opp.," ECF No. 12 at 12.) The parties agree that J.D. qualifies under the terms of the IDEA as a student with autism and intellectual disability, and also has a diagnosis of Tourette's syndrome, which requires accommodation in the educational setting. (Final Decision at 2; *see also* Opp. at 3.)

Plaintiff D.D., J.D.'s mother, contends that J.D. was denied a FAPE for the summer 2018 extended school year programming (*i.e.*, summer session), and further alleges that PA Virtual's proposed programming for the 2018-2019 school year was inappropriate pursuant to the IDEA. (Final Decision at 2.)[3] As part of the administrative proceedings, D.D. requested, as a remedy, an independent educational evaluation ("IEE"). (*Id.* at 3.) At the conclusion of the first hearing session on July 31, 2018, the hearing officer, Jake McElligott, concluded that J.D. should undergo an IEE and ordered that it take place at public expense. (ECF No. 10-13 at 105.) In his Final Decision, the hearing officer noted that the "evidence developed at the first hearing session indicated that [J.D.] last underwent comprehensive standardized testing by a local education

---

[2] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system.

[3] In early May 2018, PA Virtual recommended that placement for the 2018 summer session and 2018-2019 school year be "in a specialized school-based setting" (*i.e.*, a specialized brick-and-mortar school, as opposed to an online home-based setting). (Final Decision at 8 ¶¶ 46, 49-51.)

agency—not [PA Virtual]—in June 2011. More recent testing was completed by an outside evaluator in August 2017, but [PA Virtual's] questions about the nature, scope, and validity of the results of that testing could not be addressed with the evaluator because [J.D.'s] mother would not provide consent for [PA Virtual] to speak with the evaluator." (Final Decision at 3.) Subsequent to the hearing officer's order directing an IEE (*see* ECF No. 10-15), the parties agreed that Dr. Steven Kachmar, M.A., Ph.D., would perform the IEE.[4] (*See* Mot. at 4 n.5.) Dr. Kachmar administered multiple industry-approved testing instruments to J.D. in the local public library to measure his cognitive, achievement, behavioral/social/emotional, and adaptive areas of performance. (Affidavit of Dr. Kachmar "Kachmar Affidavit," ECF No. 12-1 ¶¶ 8, 20.) Dr. Kachmar concluded in his IEE Report that the proposed placement of J.D. in a specialized school-based educational program was appropriate for J.D.'s needs. (IEE Report at 57; *see also* Kachmar Affidavit ¶ 20.)

**B. Procedural History**

On October 11, 2018, the hearing officer issued his Final Decision in which he found that PA Virtual met its obligations to J.D. under the terms of the IDEA. (Final Decision at 19.) The hearing officer further found that placement at a specialized school for summer 2018 extended school programming and for 2018-2019 programming was appropriate. (*See id*.)

Plaintiffs timely appealed the hearing officer's decision to this Court on January 9, 2019. (*See* ECF No. 1.) Plaintiffs filed the instant Motion to Supplement the Administrative Record on July 17, 2019. Defendant filed its opposition on July 31, 2019. The Motion is ripe for review.

---

[4] Dr. Kachmar's IEE report was submitted to the parties on March 6, 2019 ("IEE Report," ECF No. 9-1), which was well after publication of the Final Decision, and is therefore not part of the administrative record. Nonetheless, on November 25, 2019, the parties jointly stipulated to the addition of the IEE Report to the administrative record on appeal. (*See* ECF No. 9.)

4

**III. DISCUSSION**

At issue *sub judice* is the parties' disagreement as to where Dr. Kachmar should have evaluated and observed J.D. for purposes of the IEE Report.[5] It is Plaintiffs' position that Dr. Kachmar should have "elected to observe J.D. in the home and community settings [(*i.e.*, a home education program independently designed by D.D.)] . . . [and that] without having observed J.D. in those settings, or seeking input from the current providers of educational services to J.D., the recommendation of [Dr. Kachmar] as to an appropriate educational placement for J.D. is seriously flawed[.]" (Mot. at 2.) It is Defendant's position that any testing and observations while J.D. participated in a private home program designed by D.D. would not have been appropriate given that J.D.'s pendant placement at the time of observation was either at the specialized school-based program or through PA Virtual's online program. (Opp. at 10-11.)[6] Defendant also attaches Dr. Kachmar's affidavit, which states in relevant part:

> At no time was I made aware of a Hearing Officer finding that D.D.'s private home-based program was part of J.D.'s [Individualized Education Plan (commonly referred to as an "IEP")][7] or in any way approved as J.D.'s educational program. Therefore, as with other unrelated matters where, for a variety of reasons, I am not able to observe student in the School's educational program pursuant to the Student's IEP, I observed J.D. during

---

[5] The Court notes that the hearing officer's order directing an IEE states that "[a]ny record review, input, assessments, testing, consultation, scope, details, proposed observations, findings, recommendations, and any other content in the independent evaluation report, shall be determined solely by the selected independent evaluator." (ECF No. 10-15 at 2.)

[6] Under the IDEA, "pendant placement" means the following: (j) Maintenance of current educational placement—except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]" IDEA § 1415(j). "The pendant placement provision was included in the IDEA to protect handicapped children and their parents during the review process." *Susquenita Sch. Dist. v. Raelee S. by and through Heidi S.*, 96 F.3d 78, 82 (3d Cir. 1996).

[7] An IEP is defined as "a written statement for each child with a disability that is developed, reviewed, and revised[.]" 20 U.S.C. § 1401(15). A child's placement must be based on the IEP. 34 C.F.R. § 300.552(b)(2).

5

>testing and in conversations which he and I had prior to, during and after testing in the public library where testing took place in a neutral environment. All of the testing and observations were done under valid conditions and therefore, the results achieved are to be considered valid as set forth in the IEE Report.

(Kachmar Affidavit ¶¶ 20-21.)

Given this disagreement, Plaintiff seeks to supplement the record with various communications between D.D., the parties' counsel, and Dr. Kachmar, with respect to the setting in which Dr. Kachmar would observe and evaluate J.D., as well as invoices from educational service providers that were hired through D.D.'s private program. (*See generally* ECF Nos. 10-5 ("AE-2"), 10-6 ("AE-3"), 10-7 ("AE-4"), 10-8 through 11 (collectively, "AE-5").). The Court finds Plaintiffs' proposed supplemental evidence cumulative and neither helpful nor relevant to the Court's ultimate determination in this case—whether PA Virtual denied J.D. a FAPE with respect to the requirements of the IDEA.

### A. E-mail Communications Between D.D., Counsel, and Dr. Kachmar

Plaintiffs seek to introduce e-mail communications between Dr. Kachmar and D.D., in which D.D. asks to have Dr. Kachmar conduct functional observations of J.D. in the private home-based program. (*See* AE-2.) The Court notes that Dr. Kachmar found that observations of J.D. in the private home program were not relevant or necessary based on the IEE that was ordered by the hearing officer, and this Court agrees. (*See* Kachmar Affidavit ¶ 20; *see also* 10-15 at 2.) Plaintiffs also seek to introduce e-mail communications between the parties' counsel regarding their differing opinions regarding what was legally required as to observations during the IEE and how this was interpreted with regard to the hearing officer's order directing the IEE. (*See* AE-3.) These e-mails between counsel are duplicative of the arguments raised in the briefing before the Court, and the Court simply does not find these e-mail exchanges relevant to

the ultimate determination as to whether J.D. was denied a FAPE. Lastly, Plaintiffs seek to introduce a single e-mail communication between Plaintiffs' counsel and Dr. Kachmar, in which Plaintiffs' counsel asks Dr. Kachmar to review additional documentation from J.D.'s 2016-2017 school year. (*See* AE-4.) The Court finds this supplemental evidence not useful as Dr. Kachmar indicates in his affidavit that he reviewed all documents sent to him by Plaintiffs' counsel and D.D. as part of the IEE process. (Kachmar Affidavit ¶¶ 8, 16.)

### B. Invoices from Educational Service Providers

Plaintiffs also seek to introduce invoices from professionals who were providing services to J.D. at the time that the IEE was conducted by Dr. Kachmar. (*See* AE-5.) Plaintiffs argue that "each invoice provides a detailed description of the services provided and a statement of J.D.'s progress. These descriptions of the various services provided to J.D. provide a description of the home-based program that Dr. Kachmar could have observed as a part of his evaluation." (Mot. at 11.) The Court finds consideration of AE-5 cumulative and not relevant. Dr. Kachmar states in his affidavit that he had access to many of these private provider invoices/reports which were sent from D.D. to him on December 31, 2018, and which he thoroughly reviewed. (Kachmar Affidavit ¶¶ 8, 16 ("I reviewed all pages of the private home-based documents which D.D. sent to me.").) Moreover, two of the three service professionals who provided invoices testified before the hearing officer on September 14, 2018. (*See* 10-14 at 36-90.) Thus, the Court finds such proffered evidence duplicative.

### IV. CONCLUSION

As noted *supra*, controlling Third Circuit precedent favors the admission of relevant, useful, and non-cumulative evidence necessary for the district court to consider whether a child has been provided with a FAPE. The Court finds Plaintiffs' proffered supplemental evidence not

particularly useful or helpful for the proper consideration of Plaintiffs' claims—*i.e.*, whether PA Virtual denied J.D. a FAPE when it recommended placement in a specialized school-based setting for the extended school year/summer session and 2018-2019 school year. Accordingly, Plaintiffs' motion to supplement the administrative record will be denied. An appropriate Order will follow.

**IT IS SO ORDERED.**

**BY THE COURT:**

/s/ Judge John Milton Younge

**Judge John Milton Younge**